UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/22/2018

---

JUSTINE MUTINSKY, as Administrator of the
Estate of JAMES A. MUTINSKY, Deceased,

                       Plaintiff,

    -against-

TOWN OF CLARKSTOWN, a public municipal
corporation of the State of New York, POLICE
OFFICER TARA PURCELL, POLICE OFFICER
JOHN MULLINS, and JOHN/JANE DOES 1-15,
being presently unknown persons who were Town of
Clarkstown police officers, law enforcement
personnel, or Town officials in their individual
capacities; jointly and severally,

                       Defendants.

No. 14-cv-7803 (NSR)(PED)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Justine Mutinksy, as administrator of the estate of James Mutinsky, brings this

action against Defendants Town of Clarkstown ("Clarkstown"), Tara Purcell, and John Mullins

alleging violations of state and federal law arising out of Plaintiff's[1] arrest on June 28, 2013

during which Plaintiff was subdued by a Conducted Electrical Weapon, commonly referred to as

a Taser. Presently before the Court is Defendants' motion to dismiss the complaint or, in the

alternative, for summary judgment pursuant to Federal Rules of Civil Procedure Rules 12(b)(1),

12(b)(6), 12(c), 12(d), 12(h)(3), and 56. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss and/or

for Summ. J. ("Defs.' Mot."), ECF No. 49.) For the following reasons, Defendants' Motion to

Dismiss and/or for Summary Judgment is GRANTED in part and DENIED in part.

---

[1] "Plaintiff" refers to both Plaintiff James Mutinsky and Judith Mutinsky, who was substituted in this case
in the place of James Mutinsky after his death. (*See* Order Substituting Representative for Deceased Pl., ECF No.
44.)

**BACKGROUND**

Plaintiff owned and resided at 65 North Grant Avenue, Congers, New York and owned and rented out 65A North Grant Avenue, Congers, New York. (Pl.'s Rule 5.1 Response to Defs.' Rule 56.1 Statement ("Pl.'s 56.1") ¶ 1, ECF No. 64.) This property was a two story free-standing building with a three car garage on the ground floor, used by both the tenant and Plaintiff, and a residential living area on the second floor at the top of a flight of stairs. (*Id.* ¶ 10.) The residential area is accessible through an entrance, secured by a lock, which leads to a stairway up to the apartment. (Lubitz Decl. Ex. 2, ECF No. 66.) The garage portion of the building was not part of the rental property. (Lubitz Decl. Ex. 2.) On June 27, 2013, the tenant,[2] who had been occupying the rental property under a written lease but was in the process of moving out, appeared at Plaintiff's residence and demanded a return of her security deposit, but the deposit was not repaid at that time. (Pl.'s 56.1 ¶ 12); (Lubitz Decl. Ex. 3.) On June 28, 2013, the tenant called Clarkstown police and requested police assistance at 65 North Grant Avenue, Congers, New York, reporting that she had been pushed by Plaintiff. (Lubitz Decl. Ex. 3) (Pl.'s 56.1 ¶ 13.) Defendants Purcell and Mullins were the police officers dispatched to respond to the call. (Pl.'s 56.1 ¶ 15.)

Defendants Purcell and Mullins met the tenant in a common driveway on the property owned by Plaintiff which was used both by Plaintiff and his tenants. (*Id.* ¶ 16.) The tenant showed a written lease to Defendants Purcell and Mullins which stated that the lease ended October 9, 2013 and, among other terms, specified that the landlord agreed that, so long as the tenant was not in default, the tenant could "peaceably and quietly have, hold and enjoy the

---

[2] Parties dispute whether the tenant was Plaintiff's former tenant at the time of the actions giving rise to the Complaint. For ease of reference, the Court will refer to the tenant as "tenant." Plaintiff testified that the tenant and Plaintiff agreed to terminate the lease, set to end on October 9, 2013, early. (Lubitz Decl. Ex. 4 (Pl.'s Dep. Tr. 9:16 – 17, 14:6 – 24, 27:24 – 25, 28:1 – 4).)

premises for the term of the lease." (Purcell Decl. Ex. A, ECF No. 51.) While Defendants Purcell and Mullins were in the driveway with the tenant, Plaintiff left his residence and approached the group to join the discussion. (Pl.'s 56.1 ¶ 19.)

At some point, while the dispute was still unresolved, Plaintiff left the driveway area and proceeded into the garage and up to the apartment. (*Id.* ¶ 24.) Defendants Purcell and Mullins followed Plaintiff to the stairway leading up to the apartment and continued speaking with Plaintiff. (*Id.* ¶ 26); (Purcell Decl. p. 5); (Mullins Decl. p. 4, ECF No. 52.) As Defendants ascended the staircase, which was very steep and without handrails, Plaintiff stood at the top of the stairway on a landing. (Pl.'s 56.1 ¶¶ 28, 33.) When Defendant Purcell was at the first step down from the landing where Plaintiff stood, Plaintiff's right foot "went up." (*Id.* ¶ 29.) According to Defendants, and documented in the misdemeanor information filed against Plaintiff, Plaintiff attempted to kick Defendant Purcell in the face. (Mullins Decl. p. 4); (Purcell Decl. p. 10); (Lubitz Decl. Ex. 9.) Plaintiff disputes this account of events. (Pl. 56.1 ¶ 29.) The parties also dispute the sequence of events leading to Plaintiff being shot with a Taser. Plaintiff contends that there were drop cloths for painters on the stairs leading up to the apartment and Plaintiff lost his balance, causing his foot to go up, when Defendants pulled a drop cloth on which he was standing. (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 61:8 – 25, 62:1 – 22 ).) According to Plaintiff, Defendant Mullins shot him with the Taser "instantly," while he was still off balance. (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 62:23 – 25, 63:1 – 13).) In contrast, Defendants, as noted in the misdemeanor information, saw that Plaintiff was "highly agitated and physically aggressive towards [Defendant Purcell]." (Lubitz Decl. Ex. 9.) Defendant Mullins observed Plaintiff's raised foot, drew and displayed the Taser, and instructed Plaintiff that he was under arrest. (Lubitz. Decl. Ex. 10 (Mullins Dep. Tr. 40: 15 – 22).) Plaintiff assumed a "fighting stance with

his fists up" and Defendant Mullins then deployed the Taser. (*Id.*) Plaintiff fell to the landing and Defendants observed that he sustained a laceration to his forehead "but otherwise appeared to be uninjured." (Pl.'s Decl. ¶ 34); (Purcell Decl. p. 7.) Plaintiff contends that he also sustained injuries to his wrists after Defendants handcuffed him during his arrest. (Lubitz Decl. Ex. 4 (Mutinski Dep. Tr. 70:2 – 5; 75:16 – 18).) After Defendants handcuffed Plaintiff, they called an EMS, and Plaintiff was taken to a local hospital for further evaluation. (Pl.'s 56.1 ¶ 37.)

Plaintiff was subsequently issued an appearance ticket, requiring him to appear in Clarkstown Justice Court to answer the charges on the offenses of harassment in the second degree and resisting arrest, filed by Defendant Purcell. (*Id.* ¶ 39.) Plaintiff voluntarily appeared for arraignment on July 15, 2013 and was released on his own recognizance with no travel restrictions. (*Id.* ¶ 40.) Judge Thorsen dismissed the charges on July 17, 2014. (*Id.* ¶ 42.)

Plaintiff filed a complaint against Defendants on September 26, 2014 ("Complaint," ECF No. 1) alleging that he is entitled to recovery under 42 U.S.C. § 1983 for Defendants' violations of the Fourth and Fourteenth Amendments. Plaintiff also brings state law claims for battery and excessive force, intentional infliction of emotional distress, false imprisonment, false arrest, abuse of process, malicious prosecution, trespass to land, invasion of privacy, negligence, and violations of the New York Constitution. Defendants filed the Motion to Dismiss and/or for Summary Judgment currently before the Court on September 25, 2016.

## LEGAL STANDARDS

### A. Rule 12(c) and Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[3] Fed. R. Civ. P.

---

[3] At the time of Defendants' Motion to Dismiss and/or for Summary Judgment, the parties had already answered Plaintiff's Complaint (ECF. No. 6).

12(c). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.' " *Graziano v. Pataki,* 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6).

In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted).  Courts may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

### B.        Rule 12(d) and Conversion to Summary Judgment

Conversely, when "matters outside the pleadings are presented to and not excluded by the court, [a motion to dismiss] must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Proc. 12(d). Rule 12(d) further provides that "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id*. Accordingly, a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings, as long as the Court gives "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden v. Random House, Inc.,* 61 F.3d 1045, 1052 (2d Cir. 1995).  Ordinarily, formal notice is not required where a party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor]

deprived of a reasonable opportunity to meet facts outside the pleadings." *Villante v. Dep't of Corr. of City of N.Y.*, 786 F.2d 516, 521 (2d Cir. 1986) (internal quotation marks omitted) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)). *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009).

As Defendants have presented matters outside the pleadings, which the Court does not exclude, and because Plaintiff was timely apprised of the possibility that this motion could be treated as a motion for summary judgment and has presented supporting material, the Court hereby treats Defendants' motion as one for summary judgment.

### C. Motion for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states in relevant part:

> A party may move for summary judgment, identifying each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating the absence of any issue of material fact or genuine dispute by pointing to evidence in the record, including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(a), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013).

Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw [] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  When reviewing the record, "the judge's function is not himself to weight the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

## DISCUSSION

I.     *Monell* **claims**

Plaintiff asserts that the Town of Clarkstown is liable for violations of the United States Constitution and the New York Constitution because it had a pattern of "ignoring and failing to rectify with reckless indifference" the unlawful conduct of Clarkstown police officers and because it inadequately trained its police officers. (Compl. ¶ 61 – 70.) A municipality may be sued under 42 U.S.C. § 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Therefore, any § 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit apply a two prong test for § 1983 claims brought against a municipal entity. *Vippolis v. Vi11age of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a " 'direct causal link between a municipal policy or custom and the alleged

constitutional deprivation.' " *Hayes v. County of Sullivan,* 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); *see also Davis v. City of New York*, No. 07-CV-1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations).

Here, the record shows no evidence that Defendant Clarkstown had a policy or had a pattern of providing deficient training to police officers that led to Plaintiff's injuries. Plaintiff states that Defendant Clarkstown's "reckless indifference [to adequate police procedures and training] is self-evident and patently obvious from the multiple and separate violations of [Plaintiff]'s constitutional rights committed by Clarkstown police officers on June 28, 2013." (Pl.'s Op. p. 8, ECF No. 63.) To support these statements, Plaintiff presents expert evidence that Defendants Mullins' and Purcell's actions violated the "standards of proper police practice." (Lubitz Decl. Ex. 1.) However, this isolated incident, involving the alleged actions of two police officers, is insufficient to establish that Defendant Clarkstown maintained customs or policies that led to Plaintiff's injuries. "A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." *Sorlucco v. N.Y. City Police Dept.*, 971 F.2d 864, 870 (2d Cir. 1992). Plaintiff only offers conclusory statements to support his allegations, and the record does not otherwise suggest that Defendant Clarkstown had deficient policies or customs. In fact, there is evidence that Defendant Clarkstown's training and policies were designed to prevent the types of injuries Plaintiff allegedly endured. Michael Sullivan,

Chief of Police of the Town of Clarkstown, testified that police officer candidates are hired based, in part, on their score on civil service examinations and must pass background checks and mental and physical evaluations. (Sullivan Decl. p. 19, ECF No. 50.) Police officers also undergo specific training in how to properly handle a Taser and how to deescalate stressful situations. (*Id.* p. 20.) Defendants Mullins and Purcell each testified that they are regularly trained in proper Taser use and de-escalation techniques. (Mullins Decl. p. 2); (Purcell Decl. 2.) Accordingly, because there is insufficient evidence to allow a reasonable jury to issue a verdict for the Plaintiff for any of his *Monell* claims against Defendant Clarkstown, summary judgment is granted for Defendant Clarkstown.

## II. Section 1983 claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a

cause of action for the violation of federal rights created by the Constitution.").  To defeat a motion for summary judgment, a plaintiff "need raise only a triable issue of fact as to whether [an officer] had any 'personal involvement' in the alleged violation of [a plaintiff]'s constitutional rights." *Djangmah v. Falcione,* No. 08-CV-4027, 2013 WL 208914, at *8 (S.D.N.Y. Jan. 18, 2013).

Here, Plaintiff alleges that the Defendants violated his Fourth and Fourteenth Amendment rights through unconstitutional search and seizure, use of excessive force, and malicious prosecution.[4]

## A.    Search and seizure

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The general contours of a search and seizure under the Fourth Amendment are well-defined.  A search occurs when " 'the government violates a subjective expectation of privacy that society recognizes as reasonable.' " *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)).  A "search" also includes the physical intrusion or trespass upon a person's property for the purpose of obtaining information.  *El-Nahal v. Yassky*, 993 F. Supp. 2d 460, 467 (S.D.N.Y. 2014).   A seizure includes arrest and occurs when, considering all of the circumstances surrounding the encounter, a reasonable person would have believed that she was not free to leave.  *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992).  The "ultimate touchstone" for an analysis of the constitutionality of a

---

[4] Plaintiff states that Defendants violated his Fourth and Fourteenth Amendment rights but also attempts to reframe most of his state claims (including battery and excessive force, intentional infliction of emotional distress, false imprisonment, false arrest, abuse of process, trespass to land, and invasions of privacy) as claims falling under § 1983.  (Compl. ¶ 61.)  Under its § 1983 analysis, the Court will consider only those claims that are constitutional violations.

search or seizure under the Fourth Amendment is reasonableness. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). The reasonableness standard invokes a " 'careful balancing of governmental and private interests.' " *Harrell v. City of New York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) (quoting *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992)).

Typically, a search or seizure is not reasonable unless it is conducted pursuant to a warrant issued upon probable cause. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989). Warrantless searches may be reasonable in special circumstances, but "must still generally be based upon probable cause." *Nicholas v. Goord*, 430 F.3d 652, 660 (2d Cir. 2005). A warrantless arrest is unreasonable unless the arresting officer has probable cause to believe that the arrestee is committing or has committed a crime. *United States v. Delossantos*, 536 F.3d 115, 158 (2d Cir. 2008). "Probable cause exists where the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Id.* (quoting *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007)).

Plaintiff argues that Defendants intervened in a private civil matter and, in doing so, unlawfully entered his property and arrested him without probable cause in violation of the Fourth Amendment. (Compl. ¶¶ 43, 54.) The parties do not dispute that Defendants Purcell and Mullins followed Plaintiff into the garage, through the entrance to the stairway, and up the apartment stairs. (Pl.'s 56.1 ¶ 23.) According to Plaintiff's testimony, on June 28, 2013, when Defendants followed him up to the landing, the tenant had vacated the apartment and had given up her lease, giving him a reasonable expectation of privacy to the space. (Lubitz Decl. Ex. 2.) Defendants, however, testified that the tenant was still in the process of moving out of the apartment. (Mullins Decl. p. 3); (Purcell Decl. p. 3.) The lease, which the tenant showed to Defendants on June 28, 2013, was

not set to terminate until October 9, 2013. (Purcell Decl. Ex. A.) "It is well established that the Fourth Amendment applies only to spaces in which an individual has a reasonable expectation of privacy." *United States v. Simmonds*, 641 F. App'x 99, 104 (2d Cir. 2016) (citing *United States v. Hayes,* 551 F.3d 138, 143 (2d Cir.2008)). A reasonable jury could determine, based on Plaintiff's and Defendants' testimony, that the tenant had vacated the apartment and Plaintiff had a reasonable expectation of privacy in the apartment when he was followed by Defendants. Thus, there is a genuine dispute of material fact as to whether the tenant had vacated the apartment at the time of the events on June 28, 2013.

There is also a genuine dispute of material fact as to whether Defendants arrested Plaintiff with probable cause. The record shows that Defendants saw Plaintiff abruptly raise his foot while he was standing on the landing and Defendant Purcell was standing on the stair just below. ((Mullins Decl. pp. 4 – 5); (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 62:5 – 9).) A person of reasonable caution could view this action as attempted assault or another related crime giving rise to probable cause to arrest Plaintiff.[5] *See Rivers v. O'Brien*, 83 F. Supp. 2d 328, 335 (N.D.N.Y. 2000) (holding that police officers had probable cause to arrest the arrestee because a person of reasonable caution would have believed that the arrestee was committing a crime by pushing the officers). However, Plaintiff testified that he was not attempting to kick either Defendant but that his foot went up because he lost his balance when Defendants pulled a painter's drop cloth from under his feet. (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 60:3 – 10).) Plaintiff's testimony undermines the legitimacy of the probable cause for the arrest, and a reasonable jury

---

[5] For this action, Plaintiff was charged with harassment in the second degree. An individual is guilty of harassment in the second degree if, with the intent to harass, annoy, or alarm another person, she strikes, shoves, kicks or otherwise subjects another person to physical contact, "or attempts or threatens to do the same." N.Y. Penal Law § 240.26(1).

could determine that Defendants arrested Plaintiff without probable cause in violation of the Fourth Amendment.

Accordingly, Defendants' motion for summary judgment on Plaintiff's Fourth Amendment search and seizure claims is denied.

**B.**     **Excessive force**

In determining whether officers have used excessive force during an arrest, a court looks to whether the officer's use of force "is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officer's] underlying intent or motivation.' " *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Under the Fourth Amendment, the proper application of the test of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Additionally, the officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* In calculating reasonableness, the fact that officers "are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation" must be taken into account. *Id.* at 396–97. Section 1983 requires Plaintiff to raise a triable issue of fact as to whether a defendant is personally involved in a constitutional violation. *Djangmah v. Falcione,* No. 08-CV-4027, 2013 WL 208914, at *8 (S.D.N.Y. Jan. 18, 2013). "A police officer is personally involved in the use of excessive force if he [or she] either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf

of the victim even though he [or she] had a reasonable opportunity to do so." *Russo v. DiMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y.2012) (internal quotation marks omitted).

The parties do not dispute that Defendant Mullins deployed his Taser, striking Plaintiff in the lower abdomen and the leg. (Pl.'s 56.1 ¶ 34.) However, the parties dispute the events leading to Plaintiff's arrest and the alleged excessive force. Defendant Purcell and Mullins testified that Plaintiff was "flailing his arms" and shouting obscenities and threats, had just attempted to kick Defendant Purcell in the face, and assumed a fighting stance after Defendant Mullins displayed his Taser and informed Plaintiff he was under arrest. (Mullins Decl. pp. 4 – 5); (Purcell Decl. p. 6.) As shown in photographs and discussed in Defendants' testimony, the stairway was very steep and narrow with no handrails. (Mullins Decl. p. 5); (Purcell Decl. p. 6 & Exs. B, C.) Plaintiff does not dispute that his foot "went up" when Defendant Purcell was on the first step below the top landing. (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 62:5 – 9).) However, Plaintiff testified that his foot rose because Defendants were attempting to remove a painter's drop cloth from under his feet and he lost his balance. (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 60:3 – 10).) Plaintiff also disputes that he was informed he was under arrest before the Taser was deployed, testifying, "When I lost my balance, I seen [sic] him with his gun, and he shot me." (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 62:3 – 4).)

There is no genuine issue of material fact as to whether Plaintiff's foot "went up" while Defendant Purcell was within contact range at the top of a flight of stairs. However, making all reasonable inferences in favor of Plaintiff, a reasonable jury could find that the use of the Taser under those circumstances was excessive force and return a verdict for the Plaintiff. Accordingly, Defendants' motion for summary judgment on Plaintiff's excessive force claim is denied on the basis that a genuine issue of material fact exists.

### C.  Malicious prosecution

Malicious prosecution claims under § 1983 seek to vindicate the Fourth Amendment's protection against unlawful seizure. *See Albright v. Oliver,* 510 U.S. 266, 271–74 (1994). To succeed on a malicious prosecution claim, a party must show "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003). "There must also be a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights" *Rutigiliano v. City of New York*, 326 F. App'x 5, 9 (2d Cir. 2009). The Second Circuit has held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin,* 591 F.3d 95, 98 (2d Cir. 2010); *cf. Swartz v. Insogna,* 704 F.3d 105, 109–10 (2d Cir. 2013) ("We have consistently held that a *post-arraignment* defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance is required' suffers a Fourth Amendment deprivation of liberty") (emphasis added).

Here, the parties do not dispute that Plaintiff was released with no travel restrictions following his arraignment for the charges of harassment in the second degree and resisting arrest. (Pl.'s 56.1 ¶¶ 39 – 40.)  Plaintiff presents no evidence that he was subsequently detained in connection with those charges. Accordingly, because Plaintiff presents no evidence of a post-arraignment liberty restraint, Defendants are entitled to summary judgment on his malicious prosecution claim as a matter of law.

### III.  State law claims

In federal court, "state notice-of-claim statutes apply to *state*-law claims." *Hardy v. N.Y. City Health & Hosp. Corp.,* 164 F.3d 789, 793 (2d Cir. 1999) (citing *Felder v. Casey,* 487 U.S. 131 (1988) ("[F]ederal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision"); *Fincher v. County of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) (noting that New York's notice-of-claim requirement applies to state law claims brought in federal court). New York General Municipal Law § 50–e requires service of a notice of claim within 90 days after a claim arises "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation." N.Y. Gen. Mun. Law § 50–e(l). Notice-of-claim requirements are "strict[ ]." *Hardy,* 164 F.3d at 793–94. Failure to comply warrants dismissal. *Id.*

The notice of claim in the record does not include Plaintiff's trespass to land, abuse of process, malicious prosecution, or invasion of privacy claims. (MacCartney Decl. Ex. A, ECF No. 53.) Accordingly, Defendants' motion for summary judgment on those claims is granted due to Plaintiff's failure to comply with General Municipal Law § 50-e. Plaintiff's remaining state law claims are discussed below.

## A.    Battery and excessive force

Under New York law, a battery claim must be supported by proof that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent. *Bastein v. Sotto,* 749 N.Y.S.2d 538, 539 (App. Div.2002). "Like a claim for excessive force under § 1983, a state law claim for battery against a police officer in the course of an arrest requires the plaintiff to prove that the officer's use of force was 'excessive or objectively unreasonable under the circumstances.' " *Biswas v. City of New York*, 973 F. Supp.

2d 504, 530 (S.D.N.Y. 2013) (quoting *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012)).

Because the Court holds that a reasonable jury could conclude that Defendants' use of the Taser was excessive force under § 1983, the Court also holds that a reasonable jury could conclude that Defendants committed battery against Plaintiff. The Court denies Defendants' motion for summary judgment on Plaintiff's state law battery claim.

### B.      False imprisonment and false arrest

False arrest and false imprisonment are substantially similar claims, *Jenkins v. City of New York*, 478 F.3d 76, 88 & n.10 (2d Cir. 2007), and the Court will address them together as false arrest. Relatedly, a New York law claim for false arrest is "substantially the same" as a § 1983 claim for false arrest under the Fourth Amendment. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). To establish a claim for false arrest under New York law, a Plaintiff must show that the defendant intentionally confined her without her consent or justification. *Id.*

For the same reasons that the Court denies Defendants' motion for summary judgment on Plaintiff's Fourth Amendment false arrest claim, *supra* II(A), the Court denies Defendants' motion for summary judgment on Plaintiff's state law false arrest claim.

### C.      Intentional infliction of emotional distress ("IIED")

The New York Court of Appeals has enumerated "four elements of a cause of action for intentional infliction of emotional distress: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Co.*, 27 N.Y.3d 46, 56 (2016) (internal quotation marks omitted). Plaintiff has not presented any evidence sufficient for a reasonable jury to conclude that Defendants intended to

cause or disregarded a substantial probability of causing emotional distress or that Plaintiff

suffered severe emotional distress. Plaintiff merely recites in a conclusory fashion that he

suffered emotional distress. (Pl.'s Op. p. 23.) Defendants are entitled to summary judgment on

Plaintiff's IIED claim.

Even if the Court were to find that there was sufficient evidence to allow Plaintiff's IIED

claim to survive summary judgment, IIED claims are typically permitted in New York only if the

plaintiff's other claims fail. The Second Circuit has recognized that IIED "remains a highly

disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d

Cir. 2014). Indeed, "the New York Court of Appeals has questioned whether an intentional

infliction claim can ever be brought where the challenged conduct falls well within the ambit of

other traditional tort liability." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal

quotation marks omitted) (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 (1978)).[6]

Accordingly, the Second Circuit has held that "an intentional infliction tort may be invoked only

as a last resort." *Salmon*, 802 F.3d at 256 (internal quotation marks omitted).[7]

### D. Violations of the New York Constitution.

The New York State Constitution provides a private right of action where remedies

are otherwise unavailable at common law or under § 1983. *Allen v. Antal*, 665 F. App'x 9, 13 (2d

Cir. 2016). Plaintiff's claim for violations of the New York Constitution is tacked on to the

Complaint without anything to differentiate it from his claims for relief under § 1983 and New

---

[6] Since then, every New York Appellate Division court has answered that question in the negative: holding that an IIED claim should not be entertained where another tort claim is available. *See Doin v. Dame*, 918 N.Y.S.2d 253, 254 (3d Dep't 2011); *Leonard v. Reinhardt*, 799 N.Y.S.2d 118, 119 (2d Dep't 2005); *Di Orio v. Utica City Sch. Dist. Bd. Of Educ.*, 758 N.Y.S.2d 743, 745 (4th Dep't 2003); *Hirschfeld v. Daily News, L.P.*, 703 N.Y.S.2d 558, 559 (1st Dep't 2000).

[7] Thus, assuming that the Plaintiff had presented sufficient evidence to allow a reasonable jury to find Defendants liable for IIED, the Court would still dismiss Plaintiff's IIED claim without prejudice because of his pending battery and false arrest claims.

York common law.  It contains no new allegations or elements to indicate that Plaintiff is

seeking a remedy that is not otherwise available under New York common law or § 1983.

Defendant's motion for summary judgment on this claim is granted.

> E.    **Negligence**

Plaintiff pleaded negligence in the alternative to all of his state law tort claims except for

his claim for intentional infliction of emotional distress.  "To establish a prima facie case

of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the

defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting

therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (internal citations and

quotations omitted).  A plaintiff cannot reassert a claim for an intentional tort as negligence.  *See*

*Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 265 n.23 (N.D.N.Y. 2014) (dismissing the

plaintiff's negligence claim because the complaint "contain[ed] no allegations of negligent

conduct, but merely reassert[ed] the intentional tort claims of assault and battery and intentional

infliction of emotional distress under a negligence heading"); *Schmidt v. Bishop*, 779 F. Supp.

321, 325 (S.D.N.Y. 1991); *Marmelstein v. Kehillat New Hempstead*, 11 N.Y.3d 15, 20 (2008).

Plaintiff's remaining state law tort claims are for battery and false arrest, intentional torts.

Even after drawing all reasonable inferences in favor of Plaintiff, see *Fincher v. Depository Trust*

*& Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010), this Court must grant Defendants summary

judgment on Plaintiffs' negligence claims.  Plaintiff merely adds negligence as an afterthought to

his battery and false arrest claims, stating that Defendants acted "intentionally and/or

negligently." (Compl. ¶¶ 34, 40.)  Plaintiff does not, however, point to any evidence in the record

to establish that Defendants had a duty toward Plaintiff, breached that duty, and caused him

injury through that breach.  These conclusory statements are insufficient to support negligence claims.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's state negligence claims as a matter of law.

## IV.    Qualified Immunity

Defendants seek qualified immunity on Plaintiff's § 1983 Fourth and Fourteenth Amendment claims and on Plaintiff's state law claims.  While qualified immunity generally only protects government officials from federal causes of action, New York common law provides government officials with a similar protection against state law causes of action.  *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 191 (S.D.N.Y. 2010).  "[A]s is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his ultimately illegal actions." *Id.* at 192.

A defendant has qualified immunity if (a) the defendant's action did not violate clearly established statutory or constitutional right, or (b) it was objectively reasonable for the defendant to believe that the action did not violate such law. *Ashcroft v. alKidd,* 131 S. Ct. 2074, 2080 (2011); *Kent v. Katz*, 312 F.3d 56 573 (2d Cir. 2002); *see, e.g., Anderson v. Creighton,*483 U.S. 635, 641 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19 (1982).  A belief is objectively reasonable if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Malley v. Briggs*, 475 U.S. 335, 341(1986).  However, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.

The principles that a person has a right to be free from battery and from excessive force were clearly established prior to Defendants' arrest of Plaintiff in 2013. *Collins v. City of New*

*York*, 295 F. Supp. 3d 350, 369 (S.D.N.Y. 2018).  Thus, Defendants are only entitled to qualified immunity if it was objectively reasonable for Defendants to deploy the Taser in the circumstances of Defendants' encounter with Plaintiff.  *See Jones v. Parmley*, 465 F.3d 46, 64 (2d Cir. 2006).  For the reasons discussed *supra* II(B), the Court finds that Defendants are not entitled to qualified immunity because there are genuine disputes of material fact related to Plaintiff's excessive force and assault and battery claims.

It was also clearly established at the time of the relevant events that an individual has a right to be free from an unreasonable search or arrest.  *See United States v. Delossantos*, 536 F.3d 115, 158 (2d Cir. 2008); *Nicholas v. Goord*, 430 F.3d 652, 660 (2d Cir. 2005).  Defendants testified that at the time they entered the apartment, they understood that the tenant was in the process of terminating her lease but had not yet vacated the apartment.  (Mullins Decl. p. 3); (Purcell Decl. p. 3.)  However, Defendants based this understanding on the tenant's statements to them when they arrived at Plaintiff's property on June 28, 2018.  (*Id.*)  It is not clear from the record that Defendants asked Plaintiff whether the tenant had vacated the apartment, but Plaintiff presents evidence that there were painters already working in the apartment and that there were painter's drop cloths of the stairs of the apartment when Defendants entered.  (Lubitz Decl. Ex. 4 (Pl. Dep. Tr. 44:15 – 20, 49:1 – 13).)  Based on the record, the Court cannot determine at this time that it was objectively reasonable for Defendants to enter the apartment.  Turning to Plaintiff's false arrest claim, Defendants are entitled to qualified immunity on Plaintiff's false arrest claim if it was objectively reasonable for Defendants to interpret Plaintiff's foot rising as harassment of Defendant Purcell.  Because there are genuine disputes of material fact surrounding the circumstances of Plaintiff's foot rising, which is the primary basis for the arrest, see *supra* II(A), Defendants are not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and/or for Summary Judgment is GRANTED in part and DENIED in part. Summary judgment is granted on all of Plaintiff's claims against Defendant Clarkstown. Plaintiff's remaining claims are for excessive force and search and seizure in violation of the Fourth Amendment under § 1983 and for false arrest and battery under New York common law. The Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 49, enter judgment in favor of Defendant Clarkstown, and remove Defendant Clarkstown from the case caption. The parties are directed to appear for an in-person pretrial conference at 10:30 AM on November 16, 2018.

Dated:    October 22, 2018                          SO ORDERED:
            White Plains, New York

                                             NELSON S. ROMÁN
                                      United States District Judge